IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3187-D

SANDRA ETTERS, et al.,                    )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )       **ORDER**
                                          )
SECRETARY BOYD BENNETT, et al.,           )
                                          )
                    Defendants.           )

On November 18, 2009, Sandra Etters, Ronda Singletary, Deven Deal, and Louretha King

("plaintiffs"), state inmates, filed this action under 42 U.S.C. § 1983 alleging violations of their

Fourth, Eighth, and Fourteenth Amendment rights and seeking compensatory and punitive damages

[D.E. 1]. Plaintiffs allege that various North Carolina Department of Correction ("DOC")

employees have sexually assaulted, abused, or harassed them during their confinement and that

certain "supervisory defendants" did nothing to prevent the abuse. Plaintiffs also seek to represent

a class of all current and future female inmates of the DOC who have been or may become victims

of sexual abuse perpetrated by DOC employees and staff [D.E. 2]. As to the class allegations,

plaintiffs seek declaratory and injunctive relief for the class under the First, Fourth, Eighth, and

Fourteenth Amendments. Plaintiffs name as defendants former Secretary of the DOC Boyd Bennett,

current DOC Secretary Alvin Keller, Prison Administrator Annie Harvey of the North Carolina

Correctional Institution for Women ("NCCIW"), Prison Administrator Timothy Kimble of the

Southern Correctional Institution ("SCI"), Unit Manager Moore, Assistant Unit Manager Ford,

Correctional Officer Wiggins, Correctional Officer Simms,[1] Nurse Barbosa, Unit Manager Blalock, and Correctional Officer Jessica Jones ("defendants"). Plaintiffs identify defendants Keller, Bennett, Harvey, and Kimble as "supervisory defendants."

Plaintiffs served the complaint on the supervisory defendants and on Moore, Ford, Barbosa, Blalock, Jones, and Simms.[2] With the exception of Barbosa and Simms, the served defendants have answered the complaint and filed a motion for judgment on the pleadings [D.E. 30], a motion to strike [D.E. 44], and a response in opposition to the motion for class certification [D.E. 33]. On March 9, 2010, Simms filed a pro se motion requesting an extension of time to find a lawyer [D.E. 29]. On September 10, 2010, the court entered an order denying plaintiffs' class certification motion without prejudice and granting Simms' motion for an extension of time to file his answer [D.E. 49]. On October 6, 2010, Barbosa filed a pro se motion requesting an extension of time to file his answer [D.E. 52], which the court granted on November 1, 2010 [D.E. 53]. On November 10, 2010, Barbosa filed his answer [D.E. 54]. On February 14, 2011, Etters filed a motion for entry of default against Simms [D.E. 55], which the court granted on February 25, 2011 [D.E. 56]. As explained below, the defendants' motion for judgment on the pleadings is granted in part and denied in part.

---

[1] In the caption of the complaint, plaintiffs named Charlie Cortez Simms as "Correctional Officer Sims." It appears that Simms is the correct spelling of his name, as evidenced by plaintiffs' affidavit of service and Simms's pro se motion for an extension of time, filed March 9, 2010. Thus the court refers to this defendant as Simms.

[2] On August 24, 2010, the court issued a Rule 4(m) notice to plaintiffs [D.E. 47], asking whether Simms and Wiggins had been served, and directing a response within ten days. On August 27, 2010, plaintiffs filed an affidavit of service [D.E. 48], stating that Simms was served with the complaint on February 17, 2010, by certified mail, return receipt requested. Pls.' Aff., Ex. A. Plaintiffs did not file any response or motion as to Wiggins.

I.

Plaintiffs are four women incarcerated in the custody of the DOC. Compl. 1. Etters is incarcerated at NCCIW, and alleges that Simms repeatedly raped her from late summer 2007 through the fall of 2007. Id. ¶ 33b. "Sim[m]s told . . . Etters he would have her transferred if she reported his abuse; he also threatened write ups." Id. ¶¶ 4a, 33d. Etters seeks damages from Simms. Id. ¶ 47. Etters also seeks damages from Bennett, Harvey, and Kimble. Id. ¶ 52.[3]

In December 2006, Singletary was an inmate at NCCIW. According to Singletary, Wiggins approached her in December 2006 and exposed his penis to her. Compl. ¶ 34a. Singletary reported the incident to defendants Moore and Ford. Moore and Ford wanted to catch Wiggins in the act and asked Singletary to interact with Wiggins "so that NCCIW could verify her allegations." Id. ¶ 34c. During the subsequent interaction, "[d]efendant Wiggins again sexually propositioned Ms. Singletary, dropped his pants and put his penis in Ms. Singletary's hand . . . when [d]efendants Moore and Ford finally intervened." Id. ¶¶ 34e–f. Singletary alleges that Moore and Ford's conduct constitutes sexual harassment. Id. ¶¶ 4e–f. Singletary seeks damages from Wiggins, Moore, and Ford. Id. ¶ 50. Singletary also seeks damages from Bennett, Harvey, and Kimble. Id. ¶ 52.

Deal is incarcerated at NCCIW. Compl. ¶ 35. According to Deal, Barbosa forced her into a locked supply closet, ordered her to expose her breasts and genitals to him, and put his mouth on her breast. Id. ¶¶ 4b, 35b. Before this incident, Deal was incarcerated at SCI. Id. ¶ 36. While at SCI, Blalock repeatedly observed Deal in her cell while she dressed. Id. ¶¶ 4c, 36a. Deal reported Blalock's actions to three correctional officers, who informed Deal that Blalock had engaged in

_____

[3]Although paragraph 52 states that plaintiffs seek damages from Keller, plaintiffs have clarified that they seek only injunctive and declaratory relief from Keller. Pls.' Mem. Opp'n 1; see Compl. ¶ 5.

3

similar conduct with other inmates and nothing could be done. Id. ¶¶ 36b–c. Deal then reported Blalock's conduct to a captain. Id. ¶ 36d. Deal alleges that Blalock was transferred to the men's unit at SCI, but then returned to the women's unit when Deal was transferred to NCCIW. Id. ¶ 36e. Deal seeks damages from Barbosa and Blalock. Id. ¶¶ 48–49. Deal also seeks damages from Bennett, Harvey, and Kimble. Id. ¶ 52.

King is incarcerated at NCCIW. Id. ¶ 37. In September 2008, Jones repeatedly sexually propositioned and harassed King, threatened King with retaliation if King did not have a relationship with Jones, sent King money, required King to call Jones at her home, and told King she would make calls to lawyers to help King get out of prison early. Id. ¶¶ 4g, 37a–b. Jones used two male officers assigned to King's housing unit as "lookouts" and these officers did not report Jones's conduct. Id. ¶ 37b. King reported Jones's harassment to a deputy warden. Id. ¶ 37c. Later, while Jones was on duty in a tower and King was in the yard, Jones aimed her rifle at King. Id. ¶ 37d. King seeks damages from Jones. See id. ¶ 51. King also seeks damages from Bennett, Harvey, and Kimble. Id. ¶ 52.

Under North Carolina law, prisoners are deemed incapable of consenting to sexual activity with DOC correctional staff. See N.C. Gen. Stat. § 14-27.7(a); see also Compl. ¶ 9. Nonetheless, according to plaintiffs, "DOC correctional staff subject women prisoners to recurrent and ongoing acts of sexual misconduct. These include forcible rape, sexual intercourse, anal intercourse, oral sexual acts, sexual touching, voyeurism, invasion of personal privacy, demeaning sexual comments, and intimidation to deter women prisoners from reporting such sexual misconduct." Compl. ¶ 10. As for the supervisory defendants, plaintiffs allege that they "are responsible for the care, custody and control of women prisoners, and, through their acts and omissions, supervisory defendants perpetuate the sexual harassment and abuse of women prisoners." Id. ¶ 11. According to plaintiffs,

4

female prisoners repeatedly have complained to DOC about sexual abuse by correctional staff, and DOC has paid over $100,000 to resolve such claims of female prisoners over the past five years. Compl. ¶ 15. "Despite these known risks and incidence [sic] of sexual misconduct by staff, supervisory defendants, through their policies and practices, have recklessly disregarded these risks, and have failed to protect the women prisoners in their custody from harm." Id. ¶ 16. Moreover, the supervisory defendants do not screen correctional staff hires "for psychological tendencies to abuse women." Id. ¶ 17. Furthermore, there are "numerous hallways, closets, and other isolated areas that are not supervised by camera or by sight. Supervisory defendants failed to account for entry and exit into these areas or provide visual supervision of isolated areas at all times." Id. ¶ 17a. Additionally, "[s]upervisory defendants assign staff to posts in which they have the opportunity for unmonitored contact with women prisoners." Id. ¶ 17b.

Plaintiffs allege that the supervisory defendants "fail to ensure the training of staff so as to prevent sexual misconduct by staff." Id. ¶ 18. "Supervisory defendants fail to implement and enforce appropriate supervision by and of its staff so as to prevent and remedy sexual misconduct." Id. ¶ 19. "Supervisory defendants' system for reporting and investigation of sexual misconduct is grossly inadequate to prevent and remedy ongoing sexual misconduct because it relies almost completely upon women prisoners to come forward and report the misconduct . . . ." Id. ¶ 20. Yet, "[s]upervisory defendants know that women prisoners are unlikely to come forward with complaints of sexual abuse by staff." Id. ¶ 21. Moreover, "[s]upervisory defendants know that, given this reluctance, having a complaint and investigation system that relies primarily on women prisoners to come forward with complaints of sexual abuse is insufficient to prevent and remedy this misconduct. Nonetheless, supervisory defendants rely on such a system and fail to utilize other means to root out sexual misconduct." Id. ¶ 22. Additionally, "[s]upervisory defendants do not

5

adequately inform women prisoners of the procedures for reporting sexual misconduct by staff, and indeed provide ambiguous information." Id. ¶ 23.

According to plaintiffs, "[u]pon information and belief there is no confidential administrative mechanism to attempt to remedy complaints by women prisoners of sexual misconduct by staff." Id. ¶ 24. Supervisory defendants do not keep confidential prisoner complaints of sexual misconduct. Id. ¶ 25. Supervisory defendants also "fail to take steps to protect women prisoners who complain of experiencing sexual misconduct by staff from retaliation or intimidation." Id. ¶ 26.

According to plaintiffs, "[p]ursuant to supervisory defendants' policies and/or practices, women prisoners who complain of sexual misconduct by staff or who are questioned in the course of an investigation are often questioned in a hostile, demeaning and threatening manner." Id. ¶ 27. Supervisory defendants also fail to use "surveillance cameras" or "electronic recording devices" to reduce the risk of staff sexual misconduct. Id. ¶ 28.

According to plaintiffs, "[s]upervisory defendants' policies and/or practices treat complaints by women prisoners of sexual misconduct by staff in a systematically biased fashion." Id. ¶ 29. Thus, "[s]upervisory defendants' policies and/or practices allow staff to engage in sexual misconduct virtually without fear of repercussions." Id. ¶ 30.

According to plaintiffs, notwithstanding N.C. Gen. Stat. § 14-27.7(a), supervisory defendants' policies permit them to charge female prisoners with disciplinary offenses for having sexual relations with staff, which may include placement in segregation, the loss of participation in programs and job assignments, and loss of access to drug and alcohol treatment. Id. ¶ 31. Disciplinary histories, placement in segregation, and program and job assignments are factors that the parole board considers in determining whether to release a prisoner. Id. Furthermore,

6

supervisory defendants "do not consistently conduct investigations into claims of sexual harassment or abuse in a prompt manner . . . ." Id. ¶ 32.

Plaintiffs have sued defendants Simms, Barbosa, Blalock, Wiggins, Moore, Ford, and Jones, "all . . . correctional officers or sergeants employed by the DOC, . . . in their individual capacities for compensatory and punitive damages." Compl. ¶¶ 4a–g. Plaintiffs have sued defendant Keller, who "was appointed Secretary for the . . . [DOC] on January 12, 2009[,] . . . in his official capacity, for prospective injunctive and declaratory relief for his failure to protect women prisoners from sexual harassment and abuse." Id. ¶ 5. Plaintiffs have sued Harvey and Kimble, administrators at the NCCIW and SCI, respectively, where plaintiffs are incarcerated, "in [their] individual capacit[ies] for damages and official capacit[ies], for prospective injunctive and declaratory relief for [their] failure to protect women prisoners from sexual harassment and abuse." Id. ¶¶ 7–8. Plaintiffs have sued Bennett, who "was Secretary for the . . . [DOC] until January 12, 2009[,] . . . in his individual capacity for damages." Id. ¶ 6.

Etters, Singletary, Deal, and King seek damages for their individual claims, as well as declaratory and injunctive relief for the class claims. See id. ¶¶ 47–52, Prayer for Relief. As for the individual claims, Etters, Singletary, Deal, and King allege that defendants violated their rights under the Fourth, Eighth, and Fourteenth Amendments. See id. As for their class claims, plaintiffs seek to pursue a class action on behalf of all current and future female inmates of the DOC against Keller, Harvey, and Kimble. See id. ¶¶ 39–46. Plaintiffs contend that Keller, Harvey, and Kimble through their policies, practices, acts, and omissions have violated the First, Fourth, Eighth, and Fourteenth Amendments. See id. Plaintiffs seek declaratory and injunctive relief against Keller, Harvey, and Kimble. See id.

7

II.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised by motion for judgment on the pleadings." Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002); see Fed. R. Civ. P. 12(h)(2); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Courts apply the "same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." Elkins Radio, 278 F.3d at 405–06; see Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 591 (4th Cir. 2004); Edwards, 178 F.3d at 243. Specifically, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 301–02 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). Although a court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiffs'] favor," Elkins Radio, 278 F.3d at 406, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 129 S. Ct. at 1949–50. Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

8

A.

Defendants argue that Singletary filed her claims outside the applicable three-year statute of limitations. See Defs.' Mem. 27–28. Thus, defendants seek judgment on the pleadings as to Singletary's claims. Plaintiffs have not responded to this argument.

As noted, Singletary alleges that Wiggins sexually harassed her in December 2006. See Compl. ¶ 34. Singletary reported the harassment to Moore and Ford. Id. Moore and Ford then asked Singletary to again interact with Wiggins. See id. According to Moore and Ford, they did so to catch Wiggins in the act. According to Singletary, they did so to verify her allegations. In any event, Singletary thereafter interacted with Wiggins and he sexually harassed her again. Moore and Ford then intervened. See id. ¶¶ 4e–f, 34.

In support of their statute-of-limitations argument, defendants filed an affidavit stating that Wiggins last worked at NCCIW on December 28, 2005, and resigned on January 11, 2006. Rogers Aff. ¶¶ 5–6. Singletary filed her grievance on August 18, 2008, Compl., Ex. B at 2, and the face of the grievance does not state when Wiggins sexually harassed her. Defendants contend that Singletary's claims accrued no later than January 11, 2006, and therefore the applicable three-year statute of limitations expired no later than on January 11, 2009. Because Singletary did not file suit until November 18, 2009, defendants argue that her claims are time-barred.

Congress has not adopted a specific statute of limitations for actions brought under 42 U.S.C. § 1983. Instead, the analogous state statute of limitations applies. See, e.g., Burnett v. Grattan, 468 U.S. 42, 48–49 (1984); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Specifically, the state statute of limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Owens v. Okure, 488 U.S. 235, 249–50 (1989). North Carolina has a three-year statute of limitations for

9

personal injury actions. N.C. Gen. Stat. § 1-52(5). Thus, North Carolina's three-year statute of limitations governs Singletary's section 1983 claim. See Franks v. Ross, 313 F.3d 184, 194 (4th Cir. 2002); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161–62 & n.2 (4th Cir. 1991).

Although the limitations period for claims brought under section 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. See, e.g., Wallace, 549 U.S. at 388; Brooks, 85 F.3d at 181. A claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See, e.g., Wallace, 549 U.S. at 388; Nasim, 64 F.3d at 955. In this case, Singletary's claims accrued on or before January 11, 2006, the effective date of Wiggins's resignation. Singletary then had three years, or until on or before January 11, 2009, within which to file suit. Because Singletary filed suit on November 18, 2009, Singletary's claims are dismissed as time-barred, and defendants Moore, Ford, and Wiggins are dismissed from this action.[4]

B.

Next, defendants argue that Deal and King's claims should be dismissed because the Prison Litigation Reform Act ("PLRA") precludes any claim of mental or emotional injury absent physical injury. Defs.' Mem. 10–11 (citing 42 U.S.C. § 1997e(e)). In support, defendants note that Deal and King allege that they "suffered severe psychological and emotional distress" as a result of being

---

[4] Even if Singletary timely filed her complaint, the court still would dismiss Wiggins because plaintiffs failed to serve him within 120 days. See Fed. R. Civ. P. 4(m). Although the court may extend the time for service under Rule 4(m), plaintiffs have not attempted to show good cause for the failure to serve Wiggins.

sexually abused and harassed, but do not allege any physical injury. Compl. ¶¶ 35e, 36f, 37e.[5] In opposition to defendants' PLRA argument, Deal and King contend that the law allows recovery of nominal or punitive damages and injunctive or declaratory relief for a constitutional violation without a showing of physical injury. See Pls.' Mem. Opp'n 17.

The PLRA provides in relevant part that:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Most circuit courts have held that section 1997e(e) applies to all federal prisoner lawsuits, including claims under 42 U.S.C. § 1983 alleging constitutional violations. See, e.g., Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004); Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 250–51 (3d Cir. 2000); contra Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998). The Fourth Circuit has not addressed this issue, but the court believes that the Fourth Circuit would follow the plain text of 42 U.S.C. § 1997e(e), apply section 1997e(e) to prisoner lawsuits, including claims under section 1983 alleging constitutional violations, and require "a prior showing of physical injury." 42 U.S.C. § 1997e(e). Thus, to the extent that Deal and King seek to bring a civil action for mental or emotional injury suffered while in custody without a prior showing of physical injury, their claims are barred.

Alternatively, Deal and King argue that section 1997e(e) does not bar their claims for nominal damages, punitive damages, or injunctive and declaratory relief. In support, Deal and King note that circuit courts uniformly have held that, even absent physical injury, section 1997e(e) does

_____

[5] Etters has alleged that she suffered physical injury in addition to severe psychological and emotional distress. Compl. ¶¶ 33g–h. Thus, defendants do not make this argument as to Etters.

not bar a prisoner who successfully proves a constitutional violation from recovering nominal damages, punitive damages, or injunctive and declaratory relief. See, e.g., Royal, 375 F.3d at 723; Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003); Thompson, 284 F.3d at 418; Searles, 251 F.3d at 878–79; Davis v. District of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998); Zehner v. Trigg, 133 F.3d 459, 462 (7th Cir. 1997). Although the Fourth Circuit has not addressed the issue, the court believes that the Fourth Circuit would adopt this interpretation of section 1997e(e). Thus, section 1997e(e) does not require dismissing Deal and King's claims for nominal damages, punitive damages, injunctive relief, or declaratory relief.

C.

Next, defendants contend that Etters, Deal, and King "have not exhausted their administrative remedies with respect to most (if not all) of their purported claims." Defs.' Mem. 11. Specifically, defendants agree that Etters and Deal have exhausted their administrative remedies as to the alleged sexual assaults they suffered at the hands of Simms and Barbosa, that Deal has exhausted her administrative remedies as to Blalock's alleged sexual harassment, and that King has exhausted her administrative remedies as to Jones's alleged sexual harassment. However, defendants contend that plaintiffs have not exhausted their administrative remedies with regard to "the deprivation of any other constitutional rights as a result of the system of reporting, investigation and resolution of sexual abuse and harassment allegations brought by women prisoners." Defs.' Mem. 13.

The PLRA requires a prisoner to exhaust her administrative remedies before filing an action under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a).[6] Exhaustion is mandatory. See, e.g., Jones v.

_____

[6] 42 U.S.C. § 1997e(a) states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

12

Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006); Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is . . . required by the PLRA to 'properly exhaust.'" Jones, 549 U.S. at 218 (citation and quotation omitted). North Carolina has such prison grievance procedures. See, e.g., Moore v. Bennette, 517 F.3d 717, 721–23 (4th Cir. 2008). Requiring exhaustion gives prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204. Grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).[7]

Etters complained that "no one did anything" about the assaults she suffered from Simms, and the grievance examiner found that "management at NCCIW had indeed taken the appropriate steps initiating an investigation into the matter." Compl., Ex. A at 2, 4 (Etters grievance). Deal noted that when she complained about Blalock to three "different staff members (C/O Lowe, Sgt Cole & Sgt Hamilton) . . . , not one of them reported it themselves . . . therefore not protecting" Deal. Compl., Ex. C at 5 (July 3, 2009 Deal grievance). Deal also asked as a remedy that "the institution (SCI) and/or individuals should in someway . . . be held accountable for not fulfilling their job duties & for not providing adequate protection." Id. Deal's grievance against Barbosa sought to prevent Barbosa from distributing her medication and asked that the prison "enforce N.C. General Statute [section] 14-27.7(a)" against Barbosa for his behavior. Id. at 2 (May 4, 2009 Deal grievance). The

---

[7] The Second, Fifth, Sixth, Ninth, and Tenth Circuits have adopted the Strong standard. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (collecting cases).

grievance examiner responded by informing Deal that her grievance was "considered resolved by DOC staff as an ongoing investigation is being conducted by PREA at this time." Id. at 4. As for King, her grievance alleged that she had been "provoked and harassed" by NCCIW staff and inmates because of Jones's conduct towards King. Compl., Ex. D at 2 (Sept. 1, 2009 King grievance). King claimed to be the victim of "deliberate indifference" and asked that she be "moved to another prison camp for [her] safety." Id.

Plaintiffs' grievances alerted prison officials of the basic facts underlying their claims. Etters's grievance alleged that officials failed to take any action after she reported the sexual assault and the grievance examiner reviewed the steps taken by NCCIW management to investigate Etters's claims. Deal alleged officials failed to report her allegations or prevent it from happening again and stated that the institution should be held accountable for not fulfilling their job duties. King claimed she was the victim of deliberate indifference because NCCIW staff provoked and harassed her and she feared for her safety. These grievances gave prison officials a fair opportunity to address the problems forming the basis of the plaintiffs' suit. See, e.g., Moore, 517 F.3d at 729; Johnson v. Johnson, 385 F.3d 503, 516–17 (5th Cir. 2004). Therefore, plaintiffs successfully exhausted their administrative remedies before filing suit.

D.

1.

Next, the court examines whether Etters, Deal, and King have stated a claim upon which relief can be granted. Cf. Defs.' Mem. 7–9, 14–25.[8] Initially, the court examines plaintiffs' claims for damages against the non-supervisory defendants.

---

[8] The court does not address Singletary's claims because they are time-barred.

14

Etters and Deal's pleadings regarding the alleged sexual assaults by Simms and Barbosa are detailed, factual allegations. See Compl. ¶¶ 4, 33, 35. Similarly, Deal's pleadings regarding Blalock's alleged sexual misconduct are detailed factual allegations. See id. ¶ 36. After recounting the details of the sexual misconduct, Etters and Deal then allege:

47. For violation of her right to be free from cruel and unusual punishment, sexual abuse, unwanted touching, verbal abuse, threats, and for violations of her right to privacy and bodily integrity, and equal protection of the laws, as set forth above, plaintiff Sandra Etters seeks compensatory and punitive damages against defendant Officer [Simms] in amounts to be determined.

48. For violation of her right to be free from cruel and unusual punishment, sexual abuse, unwanted touching, verbal abuse, threats, and for violations of her right to privacy and bodily integrity, and equal protection of the laws, as set forth . . . above, plaintiff Deven Deal seeks compensatory and punitive damages against defendant Nurse Barbosa in amounts to be determined.

49. For violation of her right to be free from cruel and unusual punishment for violations of her right to privacy and bodily integrity, and equal protection of the laws, as set forth[] above, plaintiff Deven Deal seeks compensatory and punitive damages against defendant Unit Manager Blalock in amounts to be determined.

Id. ¶¶ 47–49.

As for King, she alleges that Jones sexually harassed her. See id. ¶ 37. King then alleges:

51. For violation of her right to be free from cruel and unusual punishment, verbal abuse, threats, and for violations of her right to privacy and bodily integrity, and equal protection of the laws, as set forth above, Louretha King seeks compensatory and punitive damages against defendant officer Jessica Jones in amounts to be determined.

Id. ¶ 51.

Etters, Deal, and King seek relief from the non-supervisory defendants under the Eighth, Fourth, and Fourteenth Amendments. The court examines these individual claims seriatim.

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2)

15

deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The Supreme Court has explained that the first prong is an objective one — the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'" — and the second prong is subjective — the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" Id. (second alteration in original) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Helling v. McKinney, 509 U.S. 25, 36 (1993); Hudson v. McMillian, 503 U.S. 1, 8–9 (1992).

As for Etter's Eighth Amendment claim against Simms and Deal's Eighth Amendment claim against Barbosa, these two plaintiffs have stated a claim upon which relief can be granted against Simms and Barbosa. The Eighth Amendment protects against cruel and unusual punishment, and the alleged sexual assaults (if proven) would violate the Eighth Amendment. See, e.g., Kahle v. Leonard, 477 F.3d 544, 553 (8th Cir. 2007); Smith v. Cochran, 339 F.3d 1205, 1212–13 (10th Cir. 2003); Daskalea v District of Columbia, 227 F.3d 433, 440–41 (D.C. Cir. 2000); Schwenk v. Hartford, 204 F.3d 1187, 1196–97 (9th Cir. 2000); Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998); Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993).

As for King's Eighth Amendment claim against Jones and Deal's Eighth Amendment claim against Blalock, the analysis is different. As mentioned, King alleges that Jones sexually propositioned her, threatened her with retaliation, gave her money, required her to call Jones at her home, told King that she (Jones) would call lawyers to help King get out of prison early, and once

16

pointed a rifle at her from a guard tower. See Compl. ¶ 37. As for Deal, Deal alleges that Blalock observed her while she dressed. See id. ¶¶ 4c, 36a.

Although the court condemns the alleged actions of Jones and Blalock, the Eighth Amendment is not a state tort statute or state employment statute. Likewise, the Eighth Amendment is not Title VII. Cf. 42 U.S.C. §§ 2000e et seq.; Faragher v. City of Boca Raton, 524 U.S. 775, 786–88 (1998) (describing framework for analyzing sexual harassment claims under Title VII); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78–82 (1998). Under the Eighth Amendment, the alleged conduct of Jones and Blalock does not rise to the level of a serious deprivation of a basic human need or the unnecessary and wanton infliction of pain. See, e.g., Johnson v. Unknown Dellatifa, 357 F.3d 539, 545–46 (6th Cir. 2004); McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Barney, 143 F.3d at 1311 n.11; Freitas v. Ault, 109 F.3d 1335, 1338–39 (8th Cir. 1997); Boddie v. Schnieder, 105 F.3d 857, 861–62 (2d Cir. 1997); Adkins v. Rodriguez, 59 F.3d 1034, 1036–37 (10th Cir. 1995); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam). Thus, the court grants defendants' motion for judgment on the pleadings as to King's claim against Jones and Deal's Eighth Amendment claim against Blalock.

Plaintiffs' second cause of action alleges that the defendants deprived them of their right to be free from sexual abuse and harassment and of their rights to bodily integrity and privacy, without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Compl. ¶¶ 47–49, 51. Defendants contend that, as prisoners, plaintiffs must assert any claim asserting a right to bodily integrity under the Eighth Amendment rather than the Fourth or Fourteenth Amendment, and that plaintiffs have failed to allege any act which would constitute a violation of privacy. See Defs.' Mem. 17–19. Plaintiffs have not responded to this argument.

17

As for plaintiffs' claim of bodily integrity, the Eighth Amendment, rather than the Fourth or Fourteenth Amendment, stands as the primary constitutional limitation associated with a prisoner's bodily integrity. See, e.g., Hudson v. Palmer, 468 U.S. 517, 527–28, 530 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . The Eighth Amendment always stands as a protection against 'cruel and unusual punishments'" including "calculated harassment unrelated to prison needs."). Nonetheless, some circuit courts, including the Fourth Circuit, have held that the Fourth Amendment encompasses a very narrow right to bodily privacy in prison. Lee v. Downs, 641 F.2d 1117, 1119–21 (4th Cir. 1981) ("Most people . . . have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating."); see also Boxer X v. Harris, 437 F.3d 1107, 1110–11 (11th Cir. 2006) (concerning voyeurism); Hill v. McKinley, 311 F.3d 899, 903–04 (8th Cir. 2002) (concerning unnecessary forcible display of genitals and buttocks); Oliver v. Scott, 276 F.3d 736, 745 & n.13 (5th Cir. 2002) (collecting similar cases).

As for Etters and Deal, each has alleged sexual assault by a DOC employee. See Compl. ¶¶ 33, 35. There is no legitimate penological justification for a DOC employee to sexually assault a prisoner, and such allegations state a claim that the perpetrator violated the prisoner's Fourth Amendment right to bodily privacy. See, e.g., Shroff v. Spellman, 604 F.3d 1179, 1191 (10th Cir. 2010); Levoy v. Mills, 788 F.2d 1437, 1439 (10th Cir. 1986); see also Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993); Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992); Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir. 1992). Thus, in light of the narrow Fourth Amendment right to bodily privacy recognized in the above-referenced cases, the court permits Etters's claim against Simms and Deal's claim against Barbosa to proceed. As for Deal's Fourth Amendment claim

18

against Blalock (Compl. ¶ 36), this claim (which involves Blalock observing Deal dressing in her cell) also survives the motion for judgment on the pleadings. See, e.g., Lee, 641 F.2d at 1119–21.

However, as to King's claim against Jones, King alleges verbal harassment involving no nudity. See Compl. ¶ 37. Although Jones's alleged conduct is not appropriate, such conduct does not violate the narrow Fourth Amendment right to bodily privacy recognized in the above-referenced cases. Accordingly, the court grants defendants' motion for judgment on the pleadings as to King's Fourth Amendment claim against Jones.

Plaintiffs' final cause of action for damages against the non-supervisory defendants arises under the equal protection clause of the Fourteenth Amendment. The equal protection clause applies to the decisions of state correctional officials. See, e.g., Johnson v. California, 543 U.S. 499, 505–15 (2005). The equal protection clause, however, "does not take from the States all power of classification." Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979). Rather, it "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

To succeed on an equal protection claim, a plaintiff "must first demonstrate that [she] has been treated differently from others with whom [she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "If [she] makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002) (quoting Morrison, 239 F.3d at 654).

Plaintiffs have failed to allege in the complaint, with the requisite specifity, any comparators of a different sex. See Compl. ¶¶ 46–52; cf. Glover v. Johnson, 198 F.3d 557, 561–66 (6th Cir. 1999); Barney, 143 F.3d at 1312 & n.15; Keevan v. Smith, 100 F.3d 644, 647–50 (8th Cir. 1996);

<u>Klinger v. Dep't of Corr.</u>, 31 F.3d 727, 731–34 (8th Cir. 1994). Thus, the plaintiffs' equal protection claim fails, and the court grants defendants' motion for judgment on the pleadings.

2.

Next, the court examines Etters, Deal, and King's claims for damages against the supervisory defendants. They contend that (1) supervisory defendants know that women prisoners are at a substantial risk of sexual misconduct by DOC staff, but fail to take necessary and appropriate action (Compl. ¶¶ 9–16); (2) supervisory defendants fail to appropriately screen, assign, train, and supervise staff (<u>id.</u> ¶¶ 17–19); and, (3) supervisory defendants' system for reporting and investigating complaints of sexual misconduct is grossly inadequate (<u>id.</u> ¶¶ 20–32). Etters, Deal, and King then allege:

> 52.     For acting with deliberate indifferent to the sexual abuse and harassment of women prisoners by the officers under their supervision and facilitating the violation of their rights to be free from cruel and unusual punishment, sexual abuse, unwanted touching, verbal abuse, threats, and for violations of their rights to privacy and bodily integrity, and equal protection of the laws, as set forth above, plaintiffs Sandra Etters, . . . Deven Deal and Louretha King seek compensatory and punitive damages against defendants . . . Secretary Bennett, Administrator Harvey and Administrator Kimble.

<u>Id.</u> ¶ 52.

As for the supervisory defendants, plaintiffs essentially seek to impose liability for inadequate hiring, inadequate training and supervision, and an inadequate process for reporting and investigating alleged sexual misconduct. Such liability is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Slakan</u> <u>v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984). To establish liability, there must be an "affirmative link" between the misconduct of the subordinate employees and the actions or inactions of the supervisory defendants. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976). The causal link is necessary

20

because there is no respondeat superior liability under section 1983. See, e.g., Iqbal, 129 S. Ct. at 1949; Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); City of Canton v. Harris, 489 U.S. 378, 389 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978).

To establish liability under section 1983 for the supervisory defendants, plaintiffs must establish three things:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); see Iqbal, 129 S. Ct. at 1949; Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001). The subordinate's conduct must be "pervasive," meaning that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by subordinate poses an unreasonable risk of harm of constitutional injury." Shaw, 13 F.3d at 799. Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Furthermore, "a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." Slakan, 737 F.2d at 373; see Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002). "A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding [the supervisor] either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Slakan, 737 F.2d at 373.

21

A constitutional violation is necessary in order for plaintiffs to state a claim against a supervisory defendant, but it is not sufficient. See, e.g., Waybright v. Frederick County, 528 F.3d 199, 203–04 (4th Cir. 2008). As explained above, King failed to state a claim for a constitutional violation against Jones; therefore, King's claim against the supervisory defendants also fails. See id. However, Etters and Deal have alleged facts sufficient to state a claim for the violation of their constitutional rights due to the conduct of Simms, Barbosa, and Blalock. Etters and Deal also allege that the supervisory defendants, Kimble, Harvey, and Bennett, were aware of the pervasive risk of sexual misconduct by DOC staff, and that supervisory defendants failed to take steps to investigate reports of misconduct, increase monitoring, or otherwise decrease the likelihood DOC staff would engage in further misconduct. Compl. ¶¶ 13–32. Specifically, Etters and Deal allege multiple instances of sexual misconduct by NCCIW staff and Deal also alleges repeated misconduct by Blalock at SCI. Id. ¶¶ 33, 35–36. Etters and Deal also allege that supervisory defendants had actual or constructive knowledge of the pervasive risk of sexual misconduct because of the numerous claims of sexual abuse filed by female prisoners. Id. ¶¶ 14–15; see Pls.' Mem. Opp'n 3–5. Etters and Deal also claim that, despite knowledge of these risks, supervisory defendants have failed to take steps to address or prevent such misconduct. See Compl. ¶¶ 16–32. Etters and Deal also allege that the supervisory defendants' response to this misconduct was so inadequate that it constituted deliberate indifference, and that there is a causal link between this inaction and the injuries suffered by Etters and Deal. These allegations are sufficient to state claims against the supervisory defendants. Cf. Beers-Capitol v. Whetzel, 256 F.3d 120, 133–44 (3d Cir. 2001). Whether the claims will survive a motion for summary judgment is an issue for another day. Cf. Brown, 520 U.S. at 407–09; Harris, 489 U.S. at 391; Beers-Capitol, 256 F.3d at 133–44; Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993); Buffington v. Baltimore County, 913 F.2d

22

113, 122–23 (4th Cir. 1990). Thus, Etters's supervisory liability claim against Harvey and Bennett survives, and Deal's supervisory liability claim against Kimble, Harvey, and Bennett also survives. However, because Etters was never incarcerated at SCI, the court grants Kimble's motion for judgment on the pleadings as to the supervisory claim of Etters against Kimble.

3.

Next, the court addresses plaintiffs' claims for declaratory and injunctive relief against Keller, Harvey, and Kimble in the four causes of action made on behalf of the class. See Compl. ¶¶ 39–46. Defendants argue that they are entitled to judgment on the pleadings.

Plaintiffs' first cause of action on behalf of the class alleges that Keller, Harvey, and Kimble, "through their policies, practices, acts and omissions, exhibit deliberate indifference to the sexual harassment and abuse of the plaintiff class . . . [and] subject the plaintiff class . . . to the unnecessary and wanton infliction of pain" all in violation of the Eighth Amendment. Compl. ¶¶ 39–43. As explained above, Etters and Deal have stated claims for violations of the Eighth Amendment. However, Etters and Deal are both currently incarcerated at NCCIW, which renders moot Deal's claim for declaratory and injunctive relief against SCI Administrator Kimble. Therefore, Etters and Deal may proceed on their Eighth Amendment class claim for declaratory and injunctive relief against supervisory defendants Keller and Harvey.

Plaintiffs' second cause of action on behalf of the class alleges that Keller, Harvey, and Kimble "[b]y their policies, practices, acts and omissions, . . . deprive the plaintiff class of their right to be free from sexual abuse and harassment and their rights to bodily integrity and privacy, without due process of law, in violation of the Fourth and Fourteenth Amendments of the United States Constitution." Compl. ¶ 44. As explained above, Etters and Deal have stated claims for violations of the Fourth Amendment. But again, Etters and Deal are both currently incarcerated at NCCIW,

23

which renders moot Deal's claim for declaratory and injunctive relief against Kimble. Etters and Deal may proceed on their Fourth Amendment class claim for declaratory and injunctive relief against supervisory defendants Keller and Harvey.

Plaintiffs' third cause of action on behalf of the class alleges that Keller, Harvey, and Kimble, "through their policies, practices, acts and omissions, subject the plaintiff class to retaliation for reporting staff sexual misconduct, in violation of" the First Amendment. Compl. ¶ 45. Plaintiffs, however, do not seek relief individually for alleged violations of their First Amendment rights. See id. ¶¶ 47–52. Because none of the proposed class representatives claim any First Amendment injury, plaintiffs may not pursue such a remedy on behalf of the class. See, e.g., Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 156 (1982); Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980); Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 260 (4th Cir. 2005); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir. 1998).

Alternatively, in order to state a First Amendment retaliation claim, "plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, an inmate must allege sufficient facts which tend to support her allegation of a retaliatory motive behind defendants' actions. See White v. White, 886 F.2d 721, 724 (4th Cir. 1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. Adams, 40 F.3d at 74–75. Because there is no constitutional right to participate in grievance proceedings, plaintiffs are barred from claiming that they suffered retaliation due to the exercise of a constitutionally protected right. See id. at 75. Thus, plaintiffs have failed to state a First Amendment retaliation claim. See, e.g., id; Bane v. Va. Dep't of Corr., No. 7:06CV00733, 2007 WL 1378523, at *8 (W.D.

24

Va. May 8, 2007) (unpublished). Accordingly, the court grants defendants' motion for judgment on the pleadings as to the First Amendment claim on behalf of the class.

Plaintiffs' fourth cause of action on behalf of the class alleges that Keller, Harvey, and Kimble, "through their policies, practices, acts, and omissions are deliberately indifferent to the sexual abuse and harassment of women prisoners by the officers under their supervision, and supervisory defendants thus subject the plaintiff class to harassment and abuse of their gender in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." Compl. ¶ 46.

As with their individual claims under the equal protection clause, the class claim fails to include any allegation that Keller, Harvey, and Kimble treated plaintiffs as a class differently from others with whom the class is similarly situated and that the unequal treatment was the result of intentional discrimination. Cf. Morrison, 239 F.3d at 654. The defect dooms their equal protection claim. Moreover, although plaintiffs attempt to remedy the defect in their complaint via arguments in their memorandum opposing defendants' motion for judgment on the pleadings (Pls.' Mem. Opp'n 17), a party may not amend her complaint via a memorandum of law. See, e.g., Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 615 (E.D.N.C. 2009). Accordingly, the court grants defendants' motion for judgment on the pleadings as to the equal protection claim on behalf of the class.

E.

Defendants assert the defense of qualified immunity. Defs.' Mem. 25–27. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

25

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are only "liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (emphasis removed).

In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right. See Pearson, 129 S. Ct. at 818. If the court determines that no constitutional right was violated, "that ends the matter, and the official is entitled to immunity." Saucier v. Katz, 533 U.S. 194, 199 (2001), overruled on other grounds by Pearson, 129 S. Ct. 813. If the court determines that a constitutional right was violated, the court proceeds to determine if that right was clearly established at the time of the alleged violation. As for the "clearly established right" prong,

the right the official is alleged to have violated . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 202 (quotations and citations omitted); see, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009). The right is defined "at a high level of particularity." Edwards, 178 F.3d at 251.

Defendants Harvey, Bennett, Kimble, and Blalock argue that they are entitled to qualified immunity because the plaintiffs have not alleged any constitutional violations. Defs.' Mem. 25.[9] However, as discussed, Etters has alleged facts sufficient to state a claim for the violation of her Fourth and Eighth Amendment rights against Harvey and Bennett. Deal has alleged facts sufficient to state a claim for the violation of her Fourth Amendment rights against Blalock and Kimble, and claims for the violation of her Fourth and Eighth Amendment rights against Harvey and Bennett. Etters and Deal's constitutional rights were clearly established at the time of these alleged violations; therefore, defendants have failed to show they are entitled to qualified immunity at this stage of the proceedings. Of course, defendants may again assert qualified immunity on a more fully developed record in a motion for summary judgment.

F.

Defendants contend that the court should dismiss any claim for injunctive or declaratory relief against Bennett. The parties agree, however, that Bennett is being sued only in his individual capacity for damages. See Defs.' Mem. 28; Pls.' Mem. Opp'n 1–2; cf. Compl. ¶ 6. Thus, plaintiffs may not seek injunctive or declaratory relief from Bennett, and any request for injunctive or declaratory relief against Bennett is dismissed.

III.

For the reasons stated above, defendants' motion for judgment on the pleadings [D.E. 30] is GRANTED in part and DENIED in part. The claims of plaintiffs Singletary and King are DISMISSED. Defendants Moore, Ford, Wiggins, and Jones are DISMISSED. Plaintiff Etters's

---

[9] Simms and Barbosa are not parties to the motion for judgment on the pleadings. Keller is not sued in his individual capacity, and the court has dismissed the claims against Moore, Ford, Wiggins, and Jones.

claims against Simms and the supervisory defendants (except Kimble) under the Fourth and the Eighth Amendment survive, but her Fourteenth Amendment claim fails. As for plaintiff Deal, her Fourth and Eighth Amendment claims against Barbosa and the supervisory defendants (except Kimble) survive, her Fourth Amendment claim against Blalock and the supervisory defendants (except Harvey) survives, but her Eighth Amendment claim against Blalock fails as does her Fourteenth Amendment claim. Similarly, the court DISMISSES Etters and Deal's First Amendment and Fourteenth Amendment class claims. Defendants' motion to strike [D.E. 44] is DENIED as moot.

SO ORDERED. This **16** day of March 2011.

JAMES C. DEVER III
United States District Judge